UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**DRIP CAPITAL, INC.,**
a Delaware corporation,

    Plaintiff,                                       Civil Action No.

v.

**ELITE CATCH SEAFOOD, LLC**, a Florida
limited liability company; **HARVEST
SUPPLY CORP.**, a Florida corporation;

    Defendants,

_____/

## COMPLAINT

Plaintiff **DRIP CAPITAL, INC.** ("DRIP"), a Delaware corporation, by and through undersigned counsel, hereby sues Defendants **ELITE CATCH SEAFOOD, LLC.** ("ELITE"), a Florida limited liability company; **HARVEST SUPPLY CORP.** ("HARVEST"), a Florida corporation, and in support thereof, states the following:

## PARTIES

1. **DRIP** is a Delaware corporation, with its principal place of business at 555 Bryant Street, #356, Palo Alto, California 94301.

2. Defendant **ELITE** is a Florida limited liability company with its principal place of business located at 3500 NW 114th Avenue, Doral, FL 33178. According to filings with the Florida Secretary of State, the sole member of Elite

Catch Seafood, LLC is Gabriela Palau who is a citizen of the State of Florida residing at 7557 NW 114th CT, Medley, FL 33178

3. Defendant **HARVEST** is a Florida corporation with its principal place of business located at 110 Merrick Way, 3A, Coral Gables, FL 33134.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2),(c) and supplemental jurisdiction over any state claims pursuant to 28 U.S.C. § 1367(a).

5. Pursuant to 28 U.S.C. § 1332(a)(2), District Courts have jurisdiction of all civil actions where the matter in controversy exceeds $75,000, and is between citizens of a State and citizens or subjects of a foreign state.

6. Plaintiff DRIP is a citizen of Delaware.

7. Defendant ELITE is a citizen of the State of Florida.

8. Defendant HARVEST is a citizen of the State of Florida.

9. DRIP claims damages in excess of $75,000.00, exclusive of interest and costs.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because ELITE and HARVEST reside or maintain a principal place of business in the Southern District of Florida.

11. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to DRIP's claims occurred in the Southern District of Florida, as a considerable number of relevant items of correspondence and invoices were sent from or received within the Southern District of Florida.

12. All conditions precedent to the filing of this action, if any, have occurred or have been excused or waived.

13. DRIP has been required to retain undersigned counsel to enforce its rights through this action and has agreed to pay its counsel a reasonable fee for those services, for which ELITE is liable pursuant to the terms of the Elite Note and Master Sales Agreement.

14. DRIP has been required to retain undersigned counsel to enforce its rights through this action and has agreed to pay its counsel a reasonable fee for those services, for which HARVEST is liable pursuant to the terms of the Harvest Note.

## THE ELITE NOTE

15. On or about October 7, 2020, DRIP and ELITE entered into a Master Revolving Supply Chain Financing Promissory Note (the "Elite Note"), a true and correct copy of said Elite Note is attached hereto as **Exhibit A**.

16. Pursuant to the Elite Note, in order to receive advances under the Elite Note, ELITE would submit a Supplier Funding Request to DRIP. Once the Supplier Funding Request was approved by DRIP, DRIP would advance funds on behalf of ELITE for the purpose of paying ELITE's suppliers.

17. On October 9, 2020, ELITE submitted to DRIP a Supplier Funding Request in the total amount of $116,007.04. A true and correct copy of the Supplier Funding Request is attached hereto as **Exhibit B**.

18. The October 9, 2020 Supplier Funding Request was approved by DRIP and DRIP advanced the total amount of $116,007.04 to the supplier identified in the request on behalf of ELITE.

19. On January 5, 2021, ELITE submitted to DRIP a Supplier Funding Request in the total amount of $82,451.20. A true and correct copy of the Supplier Funding Request is attached hereto as **Exhibit C**.

20. The January 5, 2021 Supplier Funding Request was approved by DRIP and DRIP advanced the total amount of $82,451.20 to the supplier identified in the request on behalf of ELITE.

21. As of October 14, 2021, ELITE owed to DRIP an inventory advance unpaid balance of $182,557.03. DRIP has made demand upon ELITE for payment of the inventory advance unpaid balance of $182,557.03, but ELITE has failed and refused to pay same.

22. ELITE is in default of the Elite Note for failure to repay the advances made by DRIP by the advance due date(s) and upon demand.

23. ELITE has thereby breached its contractual obligations to DRIP.

24. Pursuant to paragraph 7 of the Elite Note, upon ELITE's default DRIP is entitled to declare all obligations immediately due and payable from ELITE to DRIP.

25. Pursuant to paragraph 7.5.2 of the Elite Note, in order to secure its obligations to DRIP, ELITE pledged as Collateral to DRIP all of its "current and future assets", including all accounts and accounts receivable. In the event of default of its obligations under the Elite Note, ELITE expressly authorized DRIP to record a UCC-1 Financing Statement and foreclose upon the security interests granted under the Elite Note.

26. On May 21, 2021, upon the default of ELITE under the Elite Note, DRIP recorded a UCC-1 Financing Statement with the Florida Secretary of State (under Clerk's File No. 202107169297) evidencing its first priority security interest in "all current and future assets" of ELITE, a true and correct copy being attached hereto as **Exhibit D**.

27. ELITE also acknowledged and agreed that, in addition to any other available remedies, DRIP could seek injunctive relief or other equitable and legal remedies, including attorneys' fees and costs.

## THE HARVEST NOTE

28. On or about December 16, 2020, DRIP and HARVEST entered into a Master Revolving Supply Chain Financing Promissory Note (the "Harvest Note"), a true and correct copy of said Harvest Note is attached hereto as **Exhibit E**.

29. Pursuant to the Harvest Note, in order to receive advances under the Elite Note, HARVEST would submit a Supplier Funding Request to DRIP. Once the Supplier Funding Request was approved by DRIP, DRIP would advance funds on behalf of HARVEST for the purpose of paying HARVEST's suppliers.

30. On December 18, 2020, HARVEST submitted to DRIP a Supplier Funding Request in the total amount of $87,114.56. A true and correct copy of the Supplier Funding Request is attached hereto as **Exhibit F**.

31. The December 18, 2020 Supplier Funding Request was approved by DRIP and DRIP advanced the total amount of $87,114.56 to the supplier identified in the request on behalf of HARVEST.

32. On December 22, 2021, HARVEST submitted to DRIP a Supplier Funding Request in the total amount of $76,348.80. A true and correct copy of the Supplier Funding Request is attached hereto as **Exhibit G**.

33. The December 22, 2021 Supplier Funding Request was approved by DRIP and DRIP advanced the total amount of $76,348.80 to the supplier identified in the request on behalf of HARVEST.

34. As of October 20, 2021, HARVEST owed to DRIP an inventory advance unpaid balance of $165,256.04. DRIP has made demand upon HARVEST for payment of the inventory advance unpaid balance of $165,256.04, but HARVEST has failed and refused to pay same

35. HARVEST is in default of the Harvest Note for failure to repay the advances made by DRIP by the advance due date(s) and upon demand.

36. HARVEST has thereby breached its contractual obligations to DRIP.

37. Pursuant to paragraph 7 of the Harvest Note, upon HARVEST's default DRIP is entitled to declare all obligations immediately due and payable from HARVEST to DRIP.

38. Pursuant to paragraph 7.5.2 of the Harvest Note, in order to secure its obligations to DRIP, HARVEST pledged as Collateral to DRIP all of its "current and future assets", including all accounts and accounts receivable. In the event of default of its obligations under the Harvest Note, HARVEST expressly authorized DRIP to record a UCC-1 Financing Statement and foreclose upon the security interests granted under the Harvest Note.

39. On May 21, 2021, upon the default of HARVEST under the Harvest Note, DRIP recorded a UCC-1 Financing Statement with the Florida Secretary of State (under Clerk's File No. 202107169097) evidencing its first priority security

interest in "all current and future assets" of HARVEST, a true and correct copy being attached hereto as **Exhibit H**.

40. HARVEST also acknowledged and agreed that, in addition to any other available remedies, DRIP could seek injunctive relief or other equitable and legal remedies, including attorneys' fees and costs.

### THE ELITE MASTER SALES AGREEMENT (GO TRADE)

41. On or about July 28, 2020, DRIP and ELITE entered into a Master Sales Agreement (the "Elite Go Trade Agreement"), a true and correct copy of said Elite Go Trade Agreement being attached hereto as **Exhibit I.**

42. As reflected in paragraph 1 of the Elite Go Trade Agreement, DRIP agreed to periodically purchase certain goods from or on behalf of ELITE, and ELITE agreed to repurchase those goods from DRIP at an agreed upon amount within 90 days from the date that DRIP purchased the goods (the "Repurchase Time Period").

43. Between June 30, 2020 and December 22, 2020, DRIP purchased goods totaling $412,079.55 from or on behalf of ELITE, as reflected on **Exhibit J** attached hereto.

44. Despite numerous requests and demands, ELITE has breached the terms of the Elite Go Trade Agreement, failed and refused to honor its repurchase obligations under the Elite Go Trade Agreement, and failed to timely repurchase

from DRIP any of the goods that DRIP had purchased from or on behalf of ELITE, as reflected on **Exhibit J** attached hereto.

45. DRIP has attempted to mitigate its damages arising from ELITE's breach of the Elite Go Trade Agreement by liquidating the goods it had purchased from or on behalf of ELITE, but its efforts have resulted in a net deficit balance after liquidation of the goods of $113,573.57, together with additional account charges of $100,426.65, additional warehouse charges of $82,078.55 and attorney's fees and costs, all of which are recoverable under the terms of the Elite Go Trade Agreement.

## COUNT I – ACTION AGAINST ELITE FOR BREACH OF CONTRACT (ELITE NOTE)

46. This is an action against ELITE under the Elite Note for breach of contract in which the damages are in excess of $75,000 exclusive of interest, attorney's fees and costs.

47. DRIP hereby readopts and realleges paragraphs 1 through 27 as if each were fully and independently realleged herein.

48. There is now due and owing to DRIP from ELITE, pursuant to the terms of the Elite Note, all principal sums due, together with additional interest thereon, late fees, contractual charges, costs and reasonable fees as identified in the Elite Note.

49. Demand has been made upon ELITE for payment of the amounts owed to DRIP under the Elite Note, yet ELITE has failed and refused to pay DRIP the sums due and owing.

50. Based upon the foregoing, ELITE is in breach of the Elite Note.

51. ELITE's breach of the Elite Note automatically and immediately, without notice, renders all obligations thereunder due and payable. DRIP's security interests over all of ELITE's assets survive the termination of the Elite Note until ELITE's obligations to DRIP are paid in full.

52. Based upon ELITE's breach of the Elite Note, DRIP has suffered damages in the sum of $182,557.03 as of October 14, 2021, together with interest thereon, late charges, costs and reasonable fees.

**WHEREFORE**, Plaintiff, DRIP Capital, Inc., demands judgment against Defendant Elite Catch Seafood, LLC for its damages, together with interest thereon, late charges, costs and reasonable attorneys' fees, and such other and further relief as this Court deems appropriate.

### COUNT II - ACTION AGAINST ELITE FOR BREACH OF CONTRACT (MASTER SALES AGREEMENT)

53. This is an action against ELITE under the Master Sales Agreement (Elite Go Trade Agreement) for breach of contract in which the damages are in excess of $75,000 exclusive of interest, attorney's fees and costs.

54. DRIP hereby readopts and realleges paragraphs 1 through 13, and 41 through 45, as if each were fully and independently realleged herein.

55. There is now due and owing to DRIP from ELITE, pursuant to the terms of the Elite Go Trade Agreement, all principal sums due, together with additional interest thereon, late fees, contractual charges, costs and reasonable fees as identified in the Elite Go Trade Agreement.

56. Demand has been made upon ELITE for payment of the amounts owed to DRIP under the Elite Go Trade Agreement, yet ELITE has failed and refused to pay DRIP the sums due and owing.

57. Based upon the foregoing, ELITE is in breach of the Elite Go Trade Agreement.

58. Based upon ELITE's breach of the Elite Go Trade Agreement, DRIP has suffered damages of $113,573.57, together with additional account charges of $100,426.65, additional warehouse charges of $82,078.55 and attorney's fees and costs, together with interest thereon, late charges, costs and reasonable fees.

**WHEREFORE**, Plaintiff, DRIP Capital, Inc., demands judgment against Defendant Elite Catch Seafood, LLC for its damages, together with interest thereon, late charges, costs and reasonable attorneys' fees, and such other and further relief as this Court deems appropriate.

## **COUNT III – ACTION AGAINST ELITE TO FORECLOSE SECURITY INTEREST**

59. This is an action against ELITE to foreclose a security interest encumbering personal property as described in the promissory note transaction.

60. DRIP hereby readopts and realleges paragraphs 1 through 27 as if each were fully and independently realleged herein.

61. The Elite Note is in default as a result of ELITE's default for, among other things, failure to repay the advances made by DRIP by the advance due date(s) and failure to repay advances upon demand.

62. DRIP is entitled to foreclose on the Collateral (as defined in paragraph 16.8 of the Elite Note) secured, and to obtain a judgment requiring the sale of the Collateral to partially offset or satisfy sums due to DRIP from ELITE.

63. Upon information and belief ELITE presently owns, holds title and possesses the Collateral.

64. Plaintiff's lien against the Collateral under the Elite Note is superior to any and all rights of any third parties or any other persons or entities claiming by, through or against ELITE.

65. DRIP has retained the undersigned attorneys to represent it in this action and has agreed to pay the attorneys a reasonable fee and costs for their services, for which amount ELITE is obligated pursuant to the terms and conditions of the Elite Note.

WHEREFORE, Plaintiff, Drip Capital, Inc., respectfully demands that:

A. The court enter Judgment foreclosing Plaintiff's security interest in the Collateral;

B. The court decree that Plaintiff has a lien in the Collateral, including, but not limited to, all current and future assets, accounts, accounts receivable, equipment, fixtures, building materials, personal property and general intangibles of any nature whatsoever owned by Elite, as described in the Elite Note;

C. If the sums due to Plaintiff as secured by the Elite Note are not paid immediately, the court shall foreclose on the personal property in accordance with the rules and the established practice of this court, and the clerk of the court shall sell the personal property to satisfy the amount owed to Plaintiff in accordance with the provisions of Florida Statutes, Section 45.031;

D. The court Decree that the security interest of Plaintiff with respect to personal property are superior and paramount to all liens, rights, title and interests of any party claiming by, through, under or against any ELITE, and that such liens, rights, title or interest of any Defendant named herein, or any party claiming by, through, under or against any Defendant be forever barred and foreclosed.

E. Award Plaintiff reasonable attorneys' fees and costs pursuant to the Elite Note.

## COUNT IV – ACTION AGAINST HARVEST FOR BREACH OF CONTRACT

66. This is an action against HARVEST under the Harvest Note for breach of contract in which the damages are in excess of $75,000 exclusive of interest, attorney's fees and costs.

67. DRIP hereby readopts and realleges paragraphs 1 through 14, and 28 through 40 as if each were fully and independently realleged herein.

68. There is now due and owing to DRIP from HARVEST, pursuant to the terms of the Harvest Note, all principal sums due under the Harvest Note, together with additional interest thereon, late fees, contractual charges, costs and reasonable fees as identified in the Harvest Note.

69. Demand has been made upon HARVEST for payment of the amounts owed to DRIP under the Harvest Note, yet HARVEST has failed and refused to pay DRIP the sums due and owing.

70. Based upon the foregoing, HARVEST is in breach of the Harvest Note.

71. HARVEST's breach of the Harvest Note immediately, without notice, renders all obligations thereunder due and payable. DRIP's security interests over

all of HARVEST's assets survive the termination of the Harvest Note until HARVEST's obligations to DRIP are paid in full.

72. Based upon HARVEST's breach of the Harvest Note, DRIP has suffered damages in the sum of $162,256.04 as of October 14, 2021, together with interest thereon, late charges, costs and reasonable fees.

**WHEREFORE**, Plaintiff, DRIP Capital, Inc., demands judgment against Defendant Harvest Supply Corp. for its damages, together with interest thereon, late charges, costs and reasonable attorneys' fees, and such other and further relief as this Court deems appropriate.

## COUNT V – ACTION AGAINST HARVEST TO FORECLOSE SECURITY INTEREST

73. This is an action against HARVEST to foreclose a security interest encumbering personal property as described in the promissory note transaction.

74. DRIP hereby readopts and realleges paragraphs 1 through 14, and 28 through 40 as if each were fully and independently realleged herein.

75. The Harvest Note is in default as a result of HARVEST's default for, among other things, failure to repay the advances made by DRIP by the advance due date.

76. DRIP is entitled to foreclose on the Collateral (as defined in paragraph 16.8 of the Harvest Note) secured and to obtain a judgment requiring the sale of the Collateral to partially offset or satisfy sums due to DRIP from HARVEST.

77. Upon information and belief HARVEST presently owns, holds title and possesses the Collateral.

78. DRIP's lien against the Collateral under the Harvest Note is superior to any and all rights of any third parties or any other persons or entities claiming by, through or against HARVEST.

79. DRIP has retained the undersigned attorneys to represent it in this action and has agreed to pay the attorneys a reasonable fee and costs for their services, for which amount HARVEST is obligated pursuant to the terms and conditions of the Harvest Note.

WHEREFORE, Plaintiff, Drip Capital, Inc., respectfully demands that:

F. The court enter Judgment foreclosing Plaintiff's security interest in the Collateral;

G. The court decree that Plaintiff has a lien in the Collateral, including, but not limited to, all current and future assets, accounts, accounts receivable, equipment, fixtures, building materials, personal property and general intangibles of any nature whatsoever owned by Harvest, as described in the Harvest Note;

H. If the sums due to Plaintiff as secured by the Harvest Note are not paid immediately, the court shall foreclose on the personal property in accordance with the rules and the established practice of this court, and

the clerk of the court shall sell the personal property to satisfy the amount owed to Plaintiff in accordance with the provisions of Florida Statutes, Section 45.031;

I. The court Decree that the security interest of Plaintiff with respect to personal property are superior and paramount to all liens, rights, title and interests of any party claiming by, through, under or against any HARVEST, and that such liens, rights, title or interest of any Defendant named herein, or any party claiming by, through, under or against any Defendant be forever barred and foreclosed.

J. Award Plaintiff reasonable attorneys' fees and costs pursuant to the Harvest Note.

Dated: January 6, 2022.

*s/ Jon E. Kane*
**JON E KANE**
Florida Bar No.: 814202
**South Milhausen, P.A.**
1000 Legion Place, Suite 1200
Orlando, Florida 32801
Telephone: (407) 539-1638
Facsimile: (407) 539-2679
jkane@southmilhausen.com
Attorneys for Plaintiff