United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Drip Capital Inc., Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 22-20073-Civ-Scola |
| | ) |
| Elite Catch Seafood LLC and | ) |
| Harvest Supply Corp., Defendants. | ) |

**Order Denying Motion to Dismiss**

    Drip Capital, Inc., complains Defendants Elite Catch Seafood LLC and Harvest Supply Corp. have failed to repay advances Drip Capital made to them and that, additionally, Elite Catch has failed to honor certain repurchase obligations. (Compl., ECF No. 1.) In its complaint, Drip Capital sets forth three counts for breach of contract (counts one, two, and four) and two counts to foreclose on a security interest against each defendant (counts three and five). (*Id.*) In response, the Defendants have jointly filed a motion to dismiss, reeling off a laundry list of purported defects in Drip Capital's complaint: Drip Capital lacks standing; the complaint was filed in an improper venue; subject-matter jurisdiction is lacking; Drip Capital has failed to state any claims for breach of contract or foreclosure on a security interest; the Defendants are not properly joined; and personal jurisdiction over the Defendants is lacking. (Defs.' Mot., ECF No. 22.) Drip Capital has responded to the motion (Pl.'s Resp., ECF No. 24), to which the Defendants have not replied and the time for them to do so has passed. After carefully reviewing the record, the briefing, and the relevant legal authorities, the Court agrees with Drip Capital that the Defendants' contentions are unavailing and **denies** their motion to dismiss (**ECF No. 22**).

    **1. Legal Standard**

    When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A plaintiff must articulate

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (cleaned up). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (cleaned up).

## 2. Background[1]

Drip Capital, as provided for in two separate "Master Revolving Supply Chain Financing Promissory Note" agreements (the "Elite Note" and the "Harvest Note"), agreed to periodically advance funds to both Elite Catch and Harvest Supply, upon receipt of funding requests. (Compl. ¶¶ 15–16, 28–29; Ex. A, Elite Note, ECF No. 1-1; Ex. E, Harvest Note, ECF No. 1-5.) In accordance with that set up, Drip Capital advanced sums to both Defendants, in 2020 and 2021, that have gone unrepaid and which are now in default. (Compl. ¶¶ 17–22, 30–35; Ex. B, Oct. 2020 Elite Funding Req., ECF No. 1-2; Ex. C., Jan. 2021 Elite Funding Req., ECF No. 1-3; Ex. F, Dec. 18, 2020 Harvest Funding Req., ECF No. 1-6; Ex. G, Dec. 22, 2020 Harvest Funding

---

[1] This background is based on the allegations the Plaintiff presents in its complaint. For the purposes of evaluating the Defendants' motion, the Court accepts the Plaintiff's factual allegations as true and construes the allegations in the light most favorable to it per Federal Rule of Civil Procedure 12(b)(6).

Req., ECF No. 1-7.) Under the notes, Elite Catch has an unpaid balance of $182,557.03 and Harvest Supply of $165,256.04. (Compl. ¶¶ 21, 34.)

Under paragraph 7.5.2 of both notes, the Defendants each pledged all their "current and future assets" as collateral, to secure their obligations to Drip Capital. (*Id.* ¶¶ 25, 38.) Further, through the agreements, the Defendants authorized Drip Capital to record UCC-1 financing statements and foreclose under the note's security interests, upon default. (*Id.* ¶¶ 25, 38.) Drip Capital recorded such financing statements, with the Florida Secretary of State, on May 21, 2021. (*Id.* ¶¶ 26, 39; Ex. D, Elite Fin. Stmt., ECF No. 1-4; Ex. H, Harvest Fin. Stmt., ECF No. 1-8.)

Separately, Drip Capital and Elite Catch entered into a master sales agreement (the "Sales Agreement"), through which Drip Capital agreed to periodically purchase certain goods from, or on behalf, of Elite Catch. (Compl. ¶ 41–42; Ex. I, Sales Agmt., ECF No. 1-9.) In 2020, Drip Capital purchased such goods, totaling $412,079.55. (Compl. ¶ 43; Ex. J, Inventory, ECF No. 1-10.) Elite Catch, however, has not repurchased the goods, leaving Drip Capital with a balance, after mitigating its damages, of $113,573.57, plus additional account charges of $100,426.65 and warehouse charges of $82,078.55. (Compl. ¶ 45.)

As a result of these alleged breaches, Drip Capital lodges three breach-of-contract claims, under the two notes and the Sales Agreement, along with two counts seeking to foreclosure on Drip Capital's security interests, also under the two notes. Drip Capital also seeks attorney's fees and costs which it says it is entitled to under the notes and the sales agreement.

### 3. Discussion

The Defendants maintain that Drip Capital's case should be dismissed under Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6). After review, the Court concludes that the Defendants' purported grounds for dismissal are unsupported; and many of the Defendants' contentions are flatly controverted by the record. Accordingly, for the following reasons, the Court denies the Defendants' motion to dismiss.

#### A. The Defendants' standing argument is meritless.

The Defendants say that Drip Capital "lacks the capacity or standing to bring this action." (Defs.' Mot. at 4.) In support, they complain that Drip Capital has failed to set forth any facts identifying "its legal status or capacity" and that, as "a foreign corporation transacting business in Florida, Drip is required, under section 607.1501(1), Florida Statutes, to file with the Florida

Department of State and hold a Certificate of Authority to transact business []in Florida." (*Id.* at 4–5.) Accordingly, the Defendants conclude, Drip Capital has run afoul of a Florida Statute provision that prohibits a "foreign corporation transacting business in this state without a Certificate of Authority" from "maintain[ing] a proceeding in any court in this state." (*Id.* at 5–6 (quoting Fla. Stat. § 607.1502(1)).) The Defendants are mistaken.

As set forth in Florida Statutes section 607.1501(2), the following activities, among others, are exempted from activities that are considered to "constitute transacting business": "maintaining . . . any proceeding"; "[c]reating or acquiring indebtedness, mortgages, or security interests in real or personal property"; "[s]ecuring or collecting debts or enforcing mortgages or security interests in property securing the debts, or holding, protecting, or maintaining property so acquired"; "[t]ransacting business in interstate commerce." Fla. Stat. § 607.1501(2). As Drip Capital sets forth in response to the Defendants, Drip Capital "is an out of state lender (a Delaware corporation operating out of California) who extended financial accommodations to (acquired an indebtedness from) [the Defendants], and who is now seeking to collect the unpaid balances due and foreclose upon its security interests in the property securing those debts." (Pl.'s Resp. at 4.) Without a reply, Drip Capital's portrayal of its activities within Florida are left unrebutted. Nor does Drip Capital's characterization of its activities conflict with its allegations in the complaint: nothing in the record indicates that Drip Capital is "transacting business" in Florida such that it would be required to obtain a certificate of authority. Without more, then, the Defendants' standing arguments are unavailing.

### B. The Defendants fail to establish that this case should be dismissed based on improper venue.

The Defendants also maintain that "the parties have agreed to resolve disputes arising from the Contract in a court of competent jurisdiction outside the State of Florida." (Defs.' Mot. at 2.) At the same time, the Defendants also assert that "the American Arbitration Association is the forum the parties have agreed upon for the complete resolution of matters in controversy." (*Id.*) In support, the Defendants recite language from the Elite Sales Agreement as well as the Elite Note. According to the Defendants, the Elite Note provides, on the one hand, that the parties have submitted to "the exclusive venue of California for the purpose of arbitration" but, on the other, that "jurisdiction vests in the appropriate Court of Chancery in Delaware to otherwise enforce this Note, including the entering of a judgment on an arbitration award." (*Id.*) Separately, however, the Defendants quote language from the Sales Agreement which says,

"[A]ll disputes and differences arising between the Parties hereto in connection with this Agreement or the interpretation hereof or anything done or omitted to be done pursuant hereto or the performance or non-performance of this Agreement shall be referred to and settled by arbitration administered by the American Arbitration Association . . . ." (*Id.*)

As to the putative forum-selection clause the Defendants point to in the Elite Note (which is identical to the clause in the Harvest Note), the Defendants omit key language. The clause more fully reads, in pertinent part, as follows:

> [Elite Catch] hereby irrevocably and expressly submits to exclusive venue for the purpose of the seat or location of arbitration to be in the State of California, County of Santa Clara ("Acceptable Venue for Seat of Arbitration") in respect to any issue[] that arises under or is related to this Note and [Elite Catch] expressly waives any other venue for the seat of arbitration to which [Elite Catch] may be entitled. [Elite Catch] and Drip Capital agree that pursuant to 10 Del. C. § 5702, jurisdiction vests in the appropriate Court of Chancery in Delaware to otherwise enforce this Note, including the entering of a judgment on an arbitration award. The county in which any such Delaware Court of Chancery action may be brought is Santa Clara County. [Elite Catch] acknowledges that the requirements contained in this section are independent covenants from any other promise(s) exchanged and shall be enforceable regardless of any purported breach of any other obligation owed by either the [Elite Catch] or Drip Capital.

As Drip Capital points out, this clause is permissive regarding the selection of a forum. "As the Florida Supreme Court [has] recognized . . . , mandatory forum selection clauses provide for a mandatory and exclusive place for future litigation, whereas permissive forum selection clauses constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum." *Celistics, LLC v. Gonzalez*, 22 So. 3d 824, 825 (Fla. 3d DCA 2009) (cleaned up). "A permissive forum selection clause may provide an alternative to the statutory choices of venue but it does not require the plaintiff to file the suit in the forum referred to in the agreement." *Mgmt. Computer Controls, Inc. v. Charles Perry Const., Inc.*, 743 So. 2d 627, 631 (Fla. 1st DCA 1999). Absent terms expressing forum exclusivity, a forum-selection clause will be considered permissive. *Golden Palm Hosp., Inc. v. Stearns Bank Nat. Ass'n,* 874 So. 2d 1231, 1236 (Fla. 5th DCA 2004) (noting that, absent such "words of exclusivity," "the clause will be considered permissive."). Here, the Defendants fail to identify any terms of exclusivity as to venue or any other such basis from which the Court could conclude that venue in the Southern District of Florida is improper.

Further, to the extent the arbitration provision, quoted from the Sales Agreement, renders the breach-of-contract claim related to that agreement subject to arbitration, that alone would not necessarily lead to dismissal of that count. *See Gomez v. S & I Properties, LLC*, 220 So. 3d 539, 542 (Fla. 3d DCA 2017) (Luck, J.) ("[T]here is no authority for the proposition that the existence of the arbitration clause alone strips the plaintiff of its right to bring a common law cause of action."). This is especially so where, as here, the Court declines to construe the Defendants' motion to dismiss as a motion to compel arbitration: nothing in the motion indicates that this is the Defendants' intent. *Id.* (recognizing that an arbitration clause has to be proactively enforced by one of the parties).

In sum, then, the Defendants' argument that this case should be dismissed under Rule 12(b)(3), for improper venue, fails.

### C. The Defendants fail to establish a lack of subject-matter jurisdiction.

The Defendants assert that not only did Drip Capital fail to "cite a basis for federal subject matter jurisdiction," but even if it had an opportunity to amend its complaint, it would be unable to meet the requirements of diversity jurisdiction "as the amount in controversy does not exceed $75,000.00." (Defs.' Mot. at 3.) The Defendants' position is wholly unsupported: the complaint alleges the Court's diversity jurisdiction, describing the diverse citizenships of the Plaintiff (Delaware and California (Compl. ¶¶ 1, 6)) as compared to the Defendants (both Florida (*id.* ¶¶ 2–3, 7–8)); and that the amount in controversy exceeds $75,000 (*e.g., id.* ¶¶ 5, 9, 21, 34, 45.)

### D. The Defendants have not shown that Drip Capital failed to state a claim upon which relief may be granted.

The Defendants submit that Drip Capital's complaint should be dismissed under Rule 12(b)(6) for a number of reasons: (1) Drip Capital failed to "attach a copy of the written instruments upon which [its] claims are based" (Defs.' Mot. at 11); (2) Drip Capital failed to "identify the specific provisions of the contract allegedly breached" (*id.* at 12 (cleaned up)); (3) Drip Capital has failed to allege how Elite defaulted (*id.* at 13–14); and (4) the security instruments upon which Drip Capital seeks to foreclose are not enforceable (*id.* at 14). The Court is not persuaded.

First, not only is the Defendants' contention about Drip Capital's failure to attach written instruments to the complaint contradicted by the record (*see, e.g.*, Exs. A–J, ECF Nos. 1-1 to 1-10), but their contention that such a defect would, in any event, warrant dismissal is unsupported by citations to any legal

authorities. And, to be sure, "when asserting a breach of contract claim, it is well-established that in federal court, a plaintiff is not required to attach a copy of the contract to the complaint." *GSD Constr. Services, LLC v. Lexington Ins. Co.*, 219CV00846FTM60NPM, 2020 WL 263662, at *2 (M.D. Fla. Jan. 17, 2020).

Next, the Defendants' claim that Drip Capital did not allege sufficient facts to support its breach-of-contract claims is unfounded. Drip Capital has set forth facts establishing the agreements between the parties (*e.g.*, Compl. ¶¶ 15–16, 28–29, 17–20, 30–33; 41–43, Exs. A–C, E–I); the failures of Elite Catch and Harvest Supply to pay the amounts due when required under the terms of those agreements or upon demand (*e.g.*, Compl. ¶¶ 21–22, 34–35, 44, 49, 56, 69); and that Drip Capital has suffered damages as a result of the breach (*e.g.*, *id.* ¶¶ 21, 34, 45, 52, 58, 72). In sum, the Court has no difficulty concluding the complaint's allegations sufficiently apprise the Defendants of which provisions in the agreements Drip Capital claims they have breached.

Additionally, the Court finds the Defendants' grievances as to their confusion about the due date of their payments misguided. The Defendants complain that, under the Notes, they are not required to make any payments until "fifteen . . . days *after* the Advance Payment Due Date" but Drip Capital, according to the Defendants, only alleges the Defendants did not pay "before the due date." (Defs.' Mot. at 14.) The Defendants' confusion as to when or whether they are alleged to have been in default is readily cleared up by reviewing the complaint's allegations, combined with the funding requests attached to it. Each funding request identifies an "Advance Due Date." (Oct. 2020 Elite Funding Req. at 2; Jan. 2021 Elite Funding Req. at 2; Dec. 18, 2020, Harvest Funding Req. at 2; Dec. 22, 2020, Harvest Funding Req. at 2.) Those dates, according to these documents, were, respectively, December 24, 2020; March 8, 2021; February 16, 2021; and February 20, 2021. Drip Capital filed its complaint in January 2022. According to the two notes, and as the Defendants themselves acknowledge, the Defendants would be considered in default if they failed to pay back an advance fifteen days beyond an Advance Due Date. Since the complaint alleges that there were amounts still owed as of the filing of the complaint, which was filed well beyond the fifteen-day window of any Advance Due Date, there should be no doubt that Drip Capital has properly alleged that the Defendants are in default.

Finally, the Court finds the Defendants' claims that the security interests are defective unavailing. As explained by the Eleventh Circuit, "a security interest is legally enforceable or 'perfected' (1) if the secured party possesses the collateral, or the debtor has signed a security agreement containing a description of the collateral; (2) value has been given by the secured party; and

(3) the debtor has rights in the collateral." *Gibson v. Resolution Tr. Corp.*, 51 F.3d 1016, 1023 (11th Cir. 1995). Drip Capital's allegations have alleged facts satisfying all these criteria. Additionally, the Court finds the Defendants' argument, that the collateral is not reasonably described, contrary to both Florida law and the terms of the parties' agreements. Under section 16.8 of both Notes, the parties defined "Collateral" as encompassing all of each Defendants' "Accounts, Chattel Paper, Deposit Accounts, Goods, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, General Intangibles, Supporting Obligations and any sums maintained by Drip Capital that are identified as payable to [a Defendant] for any Collateral Reserve." (Elite Note at 6; Harvest Note at 6.) The Defendants have not presented any legal authority showing that this description is somehow inadequate. Nor is the Court persuaded by the Defendants' complaint that Drip Capital did not sign either Note—the Defendants have not presented any binding precedent requiring the secured party, as opposed to the debtor, to sign the security agreement. *C.f. Gibson*, 51 F.3d at 1023 (noting only that the *debtor* must sign the "security agreement containing a description of the collateral").

### E. Fees and Costs

The Defendants also complain that Drip Capital has failed to set forth any basis for its claim for attorney's fees or costs. The Defendants are incorrect. As Drip Capital points out, fees and costs provisions are included in both Notes as well as the Sales Agreement. (Elite Note at 4; Harvest Note at 4; Sales Agmt. at 3.)

### F. Joinder

The Defendants also object to their being both joined in a single lawsuit. They point to Federal Rule of Civil Procedure 21 as "allow[ing] the Court to add or drop a party or sever any claim against a party." (Defs.' Mot. at 9 (citing Fed. R. Civ. P. 21).) Notably, though, the Defendants do not indicate which party or claims they believe should be severed. Instead, they just explain why they think, generally, there has been misjoinder in this case. Although the Court has very broad discretion to sever parties under Rule 21, *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1326 (S.D. Fla. 2014) (Bloom, J.), the Defendants, by not explaining which claims or parties they think should be actually severed, have not given the Court any reason to exercise that discretion here. To the extent, however, the Defendants are able to identify which parties or claims they believe should be severed, going forward, they may renew their request under Rule 21.

### 4. Conclusion

As set forth above, none of the grounds the Defendants present justify dismissing this case or any of its claims or parties.[2] The Court thus **denies** the Defendants' motion to dismiss (**ECF No. 22**) and orders them to answer the complaint on or before **July 13, 2022**.

**Done and ordered** in chambers at Miami, Florida on July 5, 2022.

_____
Robert N. Scola, Jr.
United States District Judge

---

[2] The Court declines to address the Defendants' perfunctory personal-jurisdiction and venue-transfer contentions. Both claims are cursory and wholly unsupported by either the record in this case or any legal authorities whatsoever. (Defs.' Mot. at 3 ("[I]f the Court were to subjugate defendants to its jurisdiction, such would be unreasonable, as this Court has neither general or specific personal jurisdiction over defendants.") ("[S]hould the Court choose not to dismiss Plaintiff's Complaint, it must at the very least transfer this action to its proper venue in Miami-Dade County, Florida in the interest of justice.")