United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Drip Capital Inc., Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-20073-Civ-Scola |
| | ) | |
| Elite Catch Seafood LLC and | ) | |
| Harvest Supply Corp., Defendants. | ) | |

**<u>Order Denying Motion to Set Aside Clerk's Default</u>**

  Drip Capital, Inc., complains Defendants Elite Catch Seafood LLC and Harvest Supply Corp. have failed to repay advances Drip Capital made to them and that, additionally, Elite Catch has failed to honor certain repurchase obligations. (Compl., ECF No. 1.) In its complaint, Drip Capital sets forth three counts for breach of contract (counts one, two, and four) and two counts to foreclose on a security interest against each defendant (counts three and five). (*Id.*) The Defendants filed a motion to dismiss, seeking dismissal of the complaint under Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6). (Defs.' Mot. to Dismiss, ECF No. 22.) The Court denied that motion in its entirety, finding the Defendants' arguments all meritless. (Order, ECF No. 27.) Within that decision, the Court ordered the Defendants to answer the complaint by July 13, 2022, bolding the date for emphasis. (Order at 9.) As that date came and went, Drip Capital sought and obtained a Clerk's default against both Defendants. (Pl.'s Mot., ECF No. 29; Clerk's Def., ECF No. 30.) The Defendants now ask the Court to set aside the Clerk's default, arguing that they took prompt action to correct the default, they have a meritorious defense, there is no prejudice to Drip Capital, and the entry of default against them would be unfair or harsh. (Defs.' Mot., ECF No. 34.) Drip Capital opposes the motion, arguing (1) the Defendants have failed to establish good cause, justifying vacating the entry of default; and (2) the default was, in any event, willful. (Pl.'s Resp., ECF No. 35.) The Defendants timely replied (Defs.' Reply, ECF No. 36.) After careful review of the record, the parties' briefing, and the relevant legal authorities, the Court finds the Defendants have failed to persuade the Court that the Clerk's default against them should be set aside. Accordingly, the Court **denies** their motion (**ECF No. 34**).

  **1. The Defendants' Position**

  In support of their motion, the Defendants explain that their failure to timely answer the complaint was because (1) their counsel was moving offices

and without internet for over three weeks; and (2) counsel was under the impression that the parties were making progress towards a resolution of their dispute. (Defs.' Mot. at 2, 3; Counsel's Aff. ¶¶ 9–10, ECF No. 34-1.) According to the Defendants, their failure to timely answer the complaint was not willful and did not amount to a reckless disregard for the judicial process. They also argue that their attorney's oversight cannot be attributed to them. Finally, the Defendants submit that they took prompt action to correct the default, they have a meritorious defense, Drip Capital will not suffer any prejudice if the default is set aside, and a default would inflict upon them a harsh or unfair result. They also vaguely point to "other reasons establishing good cause therefor." (Defs.' Mot. at 2.) The Court is not persuaded.

### 2. Legal Standard

As provided by Federal Rule of Civil Procedure 55(c), "[a] district court may set aside an entry of default for good cause." *Sherrard v. Macy's Sys. & Tech. Inc.*, 724 F. App'x 736, 738 (11th Cir. 2018). The party seeking to have the default set aside bears the burden of establishing good cause. *Id.* "Good cause is a mutable standard, varying from situation to situation." *S.E.C. v. Johnson*, 436 F. App'x 939, 945 (11th Cir. 2011). In evaluating whether the good-cause standard has been met, courts have considered a host of factors: "(a) whether the default was culpable or willful; (b) whether setting it aside would prejudice the adversary, (c) whether the defaulting party presents a meritorious defense; (d) whether there was significant financial loss to the defaulting party; and (e) whether the defaulting party acted promptly to correct the default." *Id.* These factors are not talismanic, however, but are simply "a means of identifying circumstances which warrant the finding of good cause to set aside a default." *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). Further, in the Eleventh Circuit, "if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." *Id.* at 951–52 (11th Cir. 1996).

### 3. Analysis

With the above framework in mind, the Court finds the Defendants have fallen far short of carrying their burden of establishing good cause.

First, after a careful review of the record in this case, the Court concludes the Defendants' default exhibited, at a minimum, a reckless disregard for the proceedings before the Court. In denying the Defendants' motion to dismiss, finding their arguments "unsupported" and many of their

contentions "flatly controverted by the record," the Court ordered them to answer the complaint by July 15, 2022. (Order, ECF No. 27, 9.) The Defendants acknowledged this deadline, twice, in the parties' joint status report, filed on July 8. (Jt. Status Rep. ¶¶ 2, 5, ECF No. 28.) Although the parties advised, in their joint report, that they were attempting to negotiate an amicable resolution of their dispute, the Defendants advised the Court that they would nonetheless timely file their answer in the meantime and that discovery would proceed in the absence of any settlement. (*Id.* ¶ 2.) When the Defendants missed the July 15 deadline, Drip Capital sought and obtained a Clerk's default, on July 20. (ECF Nos. 29, 30.) A week later, the Defendants, without seeking leave to do so, filed their untimely answer and affirmative defenses (Ans., ECF No. 31) and their initial motion to set aside the default (Defs.' 1st Mot., ECF No. 32.) The Court immediately denied the motion, albeit without prejudice, because the Defendants had not included a pre-filing-conference certification, as required by the Court's Local Rule 7.1(a)(3). (ECF No. 33.) Three more weeks then went by before the Defendants corrected their mistake and thereafter filed the motion now under review. To date, the Defendants have never sought a motion for an extension of time to file their answer.

      In light of the Defendants' repeated demonstration of their awareness of the deadline, combined with their abject failure to then meet that deadline, their cursory justification for the default is unconvincing. The Defendants do not explain why they could not have filed their answer—or simply requested an extension of time to do so—due to their attorney's moving his office. Their remonstration that he was "without internet for over three (3) weeks" is simply unconvincing in light of the ubiquity of internet accessibility. It is especially implausible that a lack of internet access, apparently continuously for three weeks, prevented the Defendants from answering the complaint when counsel admits, in his sworn declaration, that he "had been in constant contact with opposing counsel," having exchanged "over 15 emails messages, numerous texts and telephone conversations" with him. (Counsel's Aff. ¶ 1.) Nor do the Defendants bother explaining why their settlement discussions with Drip Capital rendered their default a mere oversight or somehow "lured Defendant[s'] counsel into a sense of complacency" (Defs' Reply at 4): in their joint-status report the Defendants pointedly confirmed their obligation to nonetheless file their answer to the complaint, despite any ongoing negotiations (Jt. Status Rep. ¶ 2). The Court finds the Defendants' proffered excuse, lacking any further elaboration, explanation, or support, wholly inadequate to show that their default was not, at a minimum, in reckless disregard for the Court's deadline and these proceedings, if not decidedly purposeful. Accordingly,

because the Court finds the Defendants' default was willful, it need not make any further findings in order to deny the motion to set aside the default. *See Compania*, 88 F.3d at 951–52 (recognizing that "if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief").

Regardless, even if the Court did not find the Defendants' default was willful, it would nonetheless conclude that the Defendants utterly failed, in any event, to carry their burden of establishing good cause. The Defendants' briefing, along with their counsel's sworn declaration, are wholly conclusory, unsupported by particularized facts from which the Court might infer good cause.

For example, in an attempt to bolster their undeveloped contention that the Defendants have "several" meritorious defenses to the complaint, they primarily point to their improperly filed answer and affirmative defenses (Ans., ECF No. 31; ECF No. 34-2), without comment or explanation (Defs.' Mot. at 2, 4; Counsel's Aff. ¶ 14). This is insufficient. In support of their bald assertion that "[m]ore than sufficient evidence of a complete defense is found in this record," the Defendants point to only their "original motion to dismiss," "subsequent motion to set aside," "affidavits," and "Answer and Affirmative Defenses." (Defs.' Reply at 4.) But their "original motion to dismiss" was roundly denied, with the Court expressly noting that "none of the grounds" the Defendants presented warranted dismissal, further describing some of their arguments as "meritless," "perfunctory," "cursory," and "wholly unsupported by either the record in this case or any legal authorities whatsoever." (Order at 3, 9 n. 2.) Despite recognizing that they needed to "present some evidence beyond conclusory denials to support their defense," the Defendants did just that: pointing to their answer and affirmative defenses, in passing and without any elaboration. (Defs.' Reply at 4 (citing *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320–21 (2d Cir. 1986) ("Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts.")).) This is insufficient. *See Griffin IT Media, Inc. v. Intelligentz Corp.*, 07-80535-CIV, 2008 WL 162754, at *3 (S.D. Fla. Jan. 16, 2008) (Marra, J.) (finding the movant had carried its burden of establishing a meritorious defense by presenting "a clear and specific statement showing, *not by conclusion*, but by definite recitation of facts that it has a colorable defense") (cleaned up) (emphasis added). Although a defendant's burden of showing a meritorious is certainly slight, the Defendants here have managed to nonetheless fall short of even that low bar. Further, their unverified answer, is comprised only of blanket denials of the complaint's allegations, with the vast

majority of the denials stating only that they are "without knowledge of the truth or falsity of the allegations." The only specific denials in the answer are directed to the amount of damages due and conclusions of law, with no outright denials offered as to their liability. Further, the Defendants' twenty boilerplate affirmative defenses, devoid of any factual underpinnings and mostly directed towards inapplicable tort claims, are similarly thoroughly ineffective to even hint at a meritorious defense. *See Griffin*, 2008 WL 162754 at *3 (recognizing that a movant seeking to set aside a default "need only provide a hint of a suggestion that her case has merit") (cleaned up).

Similarly, the Defendants' perfunctory assertion that they "took prompt action to correct the default" is not only insufficient but is also belied by the record. First it was not until the Court entered an order regarding its default procedures (ECF No. 27) that the Defendants filed their motion to dismiss, albeit two weeks after its deadline to do so had passed. Thereafter, the Defendants, after their motion to dismiss was denied, then failed to timely answer the complaint. It was not until after a week had passed, after the entry of a Clerk's default, that the Defendants submitted their answer, albeit without leave of court, which was at that point two weeks too late. And when the Court denied the Defendants' first motion to set aside the Clerk's default, for failing to comply with the Local Rules, it took the Defendants another three weeks to file an amended motion. In the face of this pattern of delay, the Defendants' mere labeling of their effort to address the default as "prompt" does not make it so.

The Defendants remaining contentions suffer from similar inadequacies. In slapdash fashion, devoid of any concrete support, the Defendants also proffer that the entry of a default against them "would produce a harsh or unfair result"; Drip Capital would suffer no prejudice if the default were to be set aside; and "other reasons"—none actually specified—amount to a showing of good cause. (Defs.' Mot. at 2; Defs.' Reply at 2; Counsel's Aff. ¶¶ 14–15.) These vague claims, expressed without any citation to fact or legal authority, fall far short of carrying the Defendants' burden of establishing the good cause that would warrant relieving them of the Clerk's default in this case.

Finally, the Defendants' argument that they cannot be held responsible for the failures of their lawyer is, under these circumstances, thoroughly meritless. "[C]lients must be held accountable for the acts and omissions of their attorneys." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 396–97 (1993). "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Link v. Wabash R.*

*Co.*, 370 U.S. 626, 634 (1962). The Defendants' pronouncement to the contrary is baseless.

### 4. Conclusion

Although "defaults are seen with disfavor because of the strong policy of determining cases on their merits," *Florida Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993), at the same time "something more than a mere request or flimsy excuse is required for good cause to be found" to set aside a default, *Matthew v. Hi*Tech Elec. Displays, Inc.*, 804-CV-2021-T-23MSS, 2005 WL 5950966, at *3 (M.D. Fla. Oct. 17, 2005). At best, the Defendants' motion here amounts to a flimsy excuse supported by nothing more than generalizations and wholly undeveloped arguments and conclusions. Accordingly, for the reasons set forth above, the Court **denies** the Defendants' motion to set aside the Clerk's default (**ECF No. 34**).

Finding the Defendants in default, the Court **strikes** the Defendants' untimely answer and affirmative defenses (**ECF No. 31**). Consequently, the Court also **denies** Drip Capital's motion for summary judgment (**ECF No. 42**) **as moot**. Because the Defendants are in default, the Court **directs the Clerk to remove** this case from its trial calendar. The Court also orders the parties to meet and confer on or before **March 20, 2023**, regarding the status of their case. If the parties are unable to reach an amicable resolution, Drip Capital must file a motion for default judgment on or before **March 27, 2023**. Drip Capital's failure to file a motion for default judgment or otherwise advise the Court of the status of this case, by that date, may result in a dismissal of Drip Capital's case without prejudice.

**Done and ordered** in chambers at Miami, Florida on March 14, 2023.

_____
Robert N. Scola, Jr.
United States District Judge